**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ROBERT BAYNARD; NANCY WILKINSON NEWELL; WILLIAM A. WILKINSON; WILLIAM LANDIS, JR.; AND ROBERT W. SCHUETZ, JR., | ) ) ) ) ) Case No.: 2:14-cv-1367 |
| | ) |
| Plaintiffs, | ) District Judge: George C. Smith ) ) Magistrate Judge: Norah McCann King |
| v. | ) ) |
| | ) JURY TRIAL DEMANDED |
| COMMONWEALTH INVESTMENTS, LTD. AND DUQUESNE PROPERTIES, LLC, | ) ) ) |
| | ) |
| Defendants. | ) ) ) ) ) |

**AMENDED COMPLAINT OF PLAINTIFFS ROBERT BAYNARD;
NANCY WILKINSON NEWELL; WILLIAM A. WILKINSON;
<u>WILLIAM LANDIS, JR.; AND ROBERT W. SCHUETZ, JR.</u>**

Plaintiffs, Robert Baynard; Nancy Wilkinson Newell; William A. Wilkinson; William Landis, Jr.; and Robert W. Schuetz, Jr. (the "Lessors"), allege as follows:

**NATURE OF THIS ACTION**

1.     This is an action for breach of contract and declaratory judgment.  Plaintiffs together own a 23/36 interest in a prime parcel of land situated at 35 East Gay Street, in downtown Columbus, Ohio (the "Lease"), which is leased by defendant, Commonwealth Investments, Ltd. ("Commonwealth Investments").  Commonwealth Investments controls an office building located on the leased parcel.  Commonwealth Investments rents the building, known as the Commerce Building, to various tenants for, on information and belief, over $900,000 per year.  Yet, Commonwealth Investments has been paying only $6,000 per year to lease the land—in clear breach

of the explicit and straightforward terms of the Lease.  *See 216 Jamaica Ave., LLC v. S & R Playhouse Realty Co.*, 540 F.3d 433 (6th Cir. 2008).

2.     When the Lease was formed in 1919, $6,000 per year was a reasonable amount for a ground lease.  The land was located at the intersection of two of Columbus's main thoroughfares and mere blocks from the Ohio State House, Columbus's Union Station, and the Scioto River.  Lessors' ancestor, Philip Lang, did not wish to sell his valuable property.  Instead, he entered into a 99-year lease with two developers.  The Lease was renewable—at the end of the 99-year term, the Lease directs the Lessor's successors in interest to execute a "renewal lease" for another 99-year term, "and that again upon expiration of said second term, there shall be executed a like renewal lease, and so on from time to time forever."   A few years later, the developers' assignees constructed the building that still stands on the property today.  For many years, it was known as the Nitschke Building, but today it is more commonly known as the Commerce Building.

3.     The parties to the Lease fully realized that $6,000 would not have the same value in 10 years, 99 years, or 198 years.  Accordingly, they included in the Lease a gold clause (the "Gold Clause").  At the time, gold clauses were the most common contractual device for mitigating the effects of currency fluctuations.  Whereas the parties to a modern long-term lease might guard against currency fluctuations by providing that the amount of rent will be adjusted according to a well-known index, such as the Consumer Price Index, gold clauses adjust the amount of rent according to the price of gold.

4.     In June 1933, Congress passed a joint resolution that rendered all gold clauses unenforceable as part of President Roosevelt's efforts to gain greater control over the currency.  And for the next several decades, gold clauses remained unenforceable.  But in 1971, the government discontinued all use of the gold standard.  Thus, after 1971, the prohibition on gold clauses served no

purpose whatsoever.  Accordingly, Congress in 1977 amended the law to provide that all gold-clause "obligations issued on or after the date of enactment" of the statute would be valid and enforceable.

5.     Commonwealth Investments' predecessor became lessee by assignment of the Lease in 1990 (the "1990 Assignment").  The 1990 Assignment constitutes an obligation issued after 1977, and thus the Gold Clause is valid and enforceable against Commonwealth Investments.

6.     In 2013, the lessors and Commonwealth Investments executed a lease renewal, extending the Lease for an additional term of 99 years (the "2013 Lease Renewal").  The 2013 Lease Renewal also constitutes an obligation issued after 1977, and thus the Gold Clause is valid and enforceable against Commonwealth Investments.

7.     The Gold Clause in the Lease explicitly obligates the lessee to pay annual rent in gold coin of the weight and fineness that was equivalent to $6,000 in 1919, or in United States currency of an equivalent value.  In 1919, the value of gold was $20.67 per ounce; today, gold is valued at more than $1,200 per ounce.  Commonwealth Investments, however, has continuously failed to comply with this obligation, and instead has paid only the face amount of rent—$6,000 per year—sometimes even refusing to pay that amount in a timely manner.  Commonwealth Investments thus is and has been reaping an enormous windfall by charging tenants of the Commerce Building rents that reflect the fair market value of real property in 2014 but paying Lessors rent that reflects the value of its real property in 1919.

8.     In this action, Lessors seek to recover their respective shares of the lost rent that Commonwealth Investments was obligated to pay under the Lease and to have the Court declare that Commonwealth Investments is obligated to comply with the Gold Clause in the future.

9.     Attached to this complaint are: the Lease, dated October 28, 1919 (Exhibit A); the Modification of Lease, dated August 20, 1920 (Exhibit B); the Assignment and Assumption of the

Lease, dated May 31, 1990 (Exhibit C); and the Lease Renewal, dated October 31, 2013 and recorded November 4, 2013 (Exhibit D).

## PARTIES

10.     Plaintiff Robert Baynard is the great-grandson of the original Lessor, Mr. Lang. He holds a 1/12 undivided interest in the parcel of land at issue in this case, which he acquired by inheritance in 2006.  He is a citizen of the United States and a resident and citizen of the State of Tennessee.

11.     Plaintiff Nancy Wilkinson Newell is the step-granddaughter of the original Lessor, Mr. Lang.  She holds a 1/9 undivided interest in the parcel of land at issue in this case, which she acquired by inheritance in 2000.  She is a citizen of the United States and a resident and citizen of the State of Alabama.

12.     Plaintiff William A. Wilkinson is the step-grandson of the original Lessor, Mr. Lang.  He holds a 1/9 undivided interest in the parcel of land at issue in this case, which he acquired by inheritance in 2000.  He is a citizen of the United States and a resident and citizen of the State of Alabama.

13.     Plaintiff William C. Landis, Jr., is the grandson of the original Lessor, Mr. Lang. He holds a 1/6 undivided interest in the parcel of land at issue in this case, which he acquired by inheritance in 1986.  He is a citizen of the United States and a resident and citizen of the Commonwealth of Virginia.

14.     Plaintiff Robert W. Schuetz, Jr., is the great-grandson of the original Lessor, Mr. Lang.  He holds a 1/6 undivided interest in the parcel of land at issue in this case, which he acquired by inheritance in 2010.  He is a citizen of the United States and a resident and citizen of the Commonwealth of Pennsylvania.

15.     Defendant Commonwealth Investments is a limited partnership organized and existing under the laws of the State of Ohio.  Its principal place of business is 33 North Third Street, Columbus, Ohio 43215.  Its General Partner is Duquesne Properties, LLC.  David Bishoff is Commonwealth Investments' agent for service of process in Ohio.  Commonwealth Investments is a citizen of the States of Ohio, Florida, and California.

16.     Defendant Duquesne Properties, LLC ("Duquesne Properties"), is a limited liability company organized and existing under the laws of the State of Ohio.  Its principal place of business is 33 North Third Street, Columbus, Ohio 43215.  Duquesne Properties was formed by E.V. Bishoff and David Bishoff.  Duquesne Properties is a citizen of the State of Ohio.

17.     Commonwealth Investments' predecessor-in-interest in the Lease was an Ohio general partnership also named Commonwealth Investments and also located at 33 North Third Street, Columbus, Ohio 43125.  Records filed with the Ohio Secretary of State indicate that this entities' general partners, including E.V. Bishoff and David Bishoff, were residents of the State of Ohio.

## JURISDICTION AND VENUE

18.     Jurisdiction is proper under 28 U.S.C. § 1332(a)(1).  Plaintiffs are citizens of Alabama, Pennsylvania, Tennessee, and Virginia.  Defendants are citizens of Ohio, Florida, and California.  The amount in controversy, exclusive of costs and interest, exceeds $75,000.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2).  Defendants reside in this judicial district.  Defendants' conduct that gives rise to Plaintiffs' claim occurred in this judicial district.  And the real property that is the subject of Plaintiffs' claim is situated in this judicial district.

## THE LEASE AND THE GOLD CLAUSE

20.     On October 28, 1919, Philip Lang leased to Edmund E. Fox and Theodore Leonard, Jr. the lot now located at 35 East Gay Street.  The Lease ran for 99 years, from October 1, 1919 to September 30, 2018.

21.     The Lease is renewable for subsequent and successive terms of 99 years, each on the same terms and conditions contained in the Lease.

22.     The Lease contains a gold clause, which, as modified in 1920, requires that "[a]ll of the [rental] payments . . . are to be made and paid in gold coin of the United States of America of the present standard of weight and fineness, or in lawful money of the United States of equivalent value, at Lessees' option . . . ."  The Lease set the rent at $6,000 per year, adjustable pursuant to the Gold Clause.  All rent was to be paid in quarterly installments, on the first days of January, April, July, and October of each year.  So long as the lessors do not object, the Lease permits lessees to "pay the same . . . by good drafts or checks on some solvent Columbus, Ohio, bank or trust company."

23.     The Gold Clause was a critical term of the Lease.  The value of money in the future is always uncertain, and the farther into the future one attempts to look, the less certain one can be.  The parties to a modern long-term lease might guard against the risk of currency fluctuations by providing that the amount of rent will be adjusted periodically according to a well-known index, such as the Consumer Price Index.  But in the late 19th Century and early 20th Century, gold clauses were the most commonly used contractual device to guard against inflation and the devaluation of the currency: the face amount of the rent under a lease would be converted to an equivalent weight of gold of a certain fineness using the price of gold at the time

the lease began; as the price of gold increased over time, the value of that fixed amount of gold—and consequently of the rent—would increase proportionately.

24.     In 1919, gold was valued at $20.67 per ounce.  (That was also the value of gold at the time of the 1920 Modification of Lease.)  At that price, $6,000 was equivalent to 290.2758 ounces of gold.  Thus, the Lease requires the lessee to pay 290.2758 ounces of gold per year in rent, or United States currency of equivalent value.

## THE FEDERAL GOLD CLAUSE STATUTE

25.     In order to manage the currency more carefully during the Great Depression, Congress, at the behest of President Roosevelt, imposed a series of restrictions on the private ownership and use of gold.  In 1933, Congress declared gold clauses to be against public policy and provided that "dollar for dollar" payments in United States currency would discharge any such obligation (the "Gold Clause Statute").  Joint Resolution of June 5, 1933, 48 Stat. 112, 113 (1933).  Thus, all extant gold clauses became unenforceable.

26.     But in 1971, the government discontinued all use of the gold standard.  Because the prohibition on gold clauses now served no purpose whatsoever, Congress in 1977 amended the Gold Clause Statute to permit gold clauses in subsequently issued obligations.  As amended, the Gold Clause Statute provides: "An obligation issued containing a gold clause or governed by a gold clause is discharged on payment (dollar-for-dollar) in United States coin or currency that is legal tender at the time of payment. *This paragraph does not apply to an obligation issued after October 27, 1977.*"  Act of October 28, 1977, Pub. L. No. 95-147, § 4(c), 91 Stat. 1227, 1229 (originally codified at 31 U.S.C. § 463 (note)) (codified as amended at 31 U.S.C. § 5118(d)(2)) (emphasis added).

## ASSIGNMENT AND BREACH OF THE LEASE

27.     Between October 28, 1919, and May 31, 1990, the Lease was assigned numerous times.  On May 31, 1990, the most recent assignee, the Nitschke Building, Ltd., assigned the Lease to Defendants' predecessor-in-interest (the "1990 Assignment").  Commonwealth Investments acquired the leasehold by quitclaim deed in 1997.

28.     The 1990 Assignment constitutes an obligation issued after October 27, 1977, so the Gold Clause is and has been valid and enforceable against Commonwealth Investments and its predecessor since 1990.

29.     Commonwealth Investments, by way of its predecessor, expressly "accept[ed], assume[d] and agree[d] to perform each and all of the lessees' covenants and agreements under the Lease to be performed from and after the date hereof."

30.     The 1990 Agreement was based on valid consideration, as it was executed "in conjunction with the sale of" the Commerce Building.

31.     The lessors consented to the 1990 Assignment's release of prior lessees.  Indeed, in the course of executing the 2013 renewal, Commonwealth Investments "represent[ed] and warrant[ed] that it is the current Lessee under the Lease, that no other lessee party or parties have any rights, obligations or interests under the Lease, and that it has full right and authority to execute and deliver this Renewal."

32.     The 2013 Lease Renewal also constitutes an obligation issued after October 27, 1977.

33.     In consideration of extending their mutual promises contained in the Lease, the parties to the 2013 Lease Renewal expressly agreed to incorporate "all terms, provisions, and conditions of the Lease" and specified that "[t]his Renewal shall constitute the 'renewal lease' as

contemplated by the Lease."  Furthermore, the parties agreed that, "[e]xcept as modified by this Renewal, the Lease shall continue in full force and effect according to its original terms, provisions and conditions.  In the event of a conflict or ambiguity between the Lease and this Renewal, the Renewal will control."  The 2013 Lease Renewal did not modify the Gold Clause.

34.     The Gold Clause contained in the Lease and incorporated in the 2013 Lease Renewal obligates Commonwealth Investments to pay the annual rent in gold coin of the weight and fineness that was equivalent to $6,000 at the time the Lease was executed on October 28, 1919, or to pay United States currency of an equivalent amount.  Yet, since becoming lessee pursuant to the 1990 Assignment of the Lease, Commonwealth Investments (or its predecessor) has made all rent payments at the "dollar for dollar," or face, amount of $6,000 per year. Accordingly, Commonwealth Investments (or its predecessor) is and has been in breach of its obligation under the Lease since it became lessee in 1990.

35.     The value of the 290.2758 ounces of gold that Commonwealth Investments has been required to pay under the Lease exceeds substantially the value of the face amount of rent that Commonwealth Investments has paid to Lessors.  In 1919, the value of gold was $20.67 per ounce; today, gold is valued at more than $1,200 per ounce.  Thus, pursuant to the Gold Clause, Commonwealth Investments should be paying over $340,000 in rent per year.  By paying only the face amount of rent, in breach of the Gold Clause, Commonwealth Investments thus is and has been reaping an enormous windfall—it charges tenants of the Commerce Building rents that reflect the fair market value of real property in 2014 but pays Lessors rent that reflects the value of its real property in 1919.

36.     Commonwealth Investments has converted the Commerce Building into an office building with over 80,000 square feet of space, which is situated on the parcel subject to the Lease.

37.     On information and belief, Commonwealth Investments sublets the Commerce Building to various tenants for over $900,000 per year.

38.     The Lease established "a lien prior to all other liens hereafter created upon said real estate, improvements, and the estate and interest of said Lessees for the faithful and prompt payment of said rent and the performance of each and all of the covenants and conditions herein contained."

39.     The Lease (as modified in 1920) further provides that

if it shall happen that any installment of rent shall not be paid on the date on which the same should be paid, in the manner and form herein provided, . . . then and in any such event, at the option of said Lessor, this lease and the estate hereby demised and interest and estate of said Lessees in and to said premises, and the buildings and improvements thereon, and the estate, and interest of any persons claiming by, through or under said Lessees, shall, at Lessor's option, be thereby terminated, and ended and forfeited, and every clause, article and thing herein contained, on the part of said Lessor to be performed, fulfilled and kept, shall cease, determine and be utterly void to all intents and purposes whatsoever, anything herein to the contrary notwithstanding, and that without prejudice to any remedies or proceedings which might otherwise be used for arrears of rent, breach of covenant, or collection of debt, and it shall be lawful for the said Lessor, his heirs and assigns, into said premises to re-enter and the same to have and possess again as in his first and former estate therein, it being understood that no re-entry as for condition broken, as at common law, shall be necessary to enable said Lessor to recover possession of said premises and to resume their first and former estate therein; provided, however, that no forfeiture of this lease shall be accomplished and no re-entry made until after the expiration of thirty days from the time of the service of a written notice by the Lessor upon the Lessees specifying the default complained of, and requiring the Lessees to pay rent in arrears . . . .

40.     The 2013 Lease Renewal additionally provides that

Lessors agree to provide to any mortgagee of record of the Premises notice of any claimed default by Lessee under the Lease, such notice to be given simultaneously with the required notice to Lessee.  Such mortgagee shall have the right (but not the

obligation) to cure such claimed default during the thirty (30) day period provided in the Lease for Lessee to cure such claimed default and Lessors agree to accept such cure from such mortgagee or from Lessee.

41.     The Lease also provides that:

It is hereby expressly understood and mutually agreed that this lease and each and every article, clause and thing herein contained on the part of the said Lessor and the said Lessees, respectively, to be done, kept, and performed, shall be considered and held to run with the land, and shall extend to and be mutually binding upon the respective Lessor and Lessees and their heirs, executors, administrators, successors, and assigns.

## COUNT I: BREACH OF CONTRACT

42.     Plaintiffs incorporate the allegations described in Paragraphs 1 through 41 above as if fully set forth herein.

43.     Since the 1990 Assignment, Commonwealth Investments and its predecessor-in-interest have been obligated under the Lease to pay rent in gold coin of the weight and fineness that was equivalent to $6,000 on October 28, 1919, or to pay rent in United States currency of an equivalent value.  As explained above, Commonwealth Investments assumed this obligation under the Lease in 1997.

44.     Since the 1990 Assignment, Commonwealth Investments has in fact paid substantially less than the amount of rent due and has paid only the face amount of $6,000 per year.

45.     Therefore, Commonwealth Investments has breached the Lease each time the rent has come due since the 1990 Assignment.

46.     Duquesne Properties is jointly and severally liable for Commonwealth Investments' obligations.  *See* OH. REV. CODE §§ 1776.36, 1782.24(B).

47.     As the direct and proximate result of Defendants' breaches of the Lease, Plaintiffs have been injured.

## COUNT II: DECLARATORY JUDGMENT

48.     Plaintiffs incorporate the allegations described in Paragraphs 1 through 47 above as if fully set forth herein.

49.     The Lease and 2013 Lease Renewal obligate Defendants to make all future rent payments in gold coin of the weight and fineness that was equivalent to $6,000 on October 28, 1919, or in United States currency of an equivalent value.

## JURY DEMAND

50.     Plaintiffs demand a trial by jury, pursuant to Federal Rule of Civil Procedure 38, of all issues triable of right by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand:

(1)     That Defendants be adjudged and decreed to have breached the Lease each time rent has come due since the 1990 Assignment;

(2)     That Plaintiffs recover their proportionate shares of all rents due and owing under the Lease, in an amount of damages to be determined at trial;

(3)     That Plaintiffs recover their proportionate shares of all rents that come due and are owed under the Lease between this day and the day of final judgment, in an amount of damages to be determined at trial;

(3)     That the Court declare that Defendants are obligated under the Lease and 2013 Lease Renewal to make all future rent payments in gold coin of the weight and fineness that was equivalent to $6,000 on October 28, 1919, or in United States currency of an equivalent value, with respect to the proportionate shares of such rent owed to Plaintiffs;

(4)     That Plaintiffs be granted such other, further, and different legal or equitable relief as the nature of the case may require or as may be deemed just and appropriate by this Court.

Dated:  October 24, 2014

Respectfully submitted,

s/ Peter A. Patterson
Peter A. Patterson, Bar No. 0080840
 *Trial Attorney*
Charles J. Cooper*
David H. Thompson*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel:  (202) 220-9600
Fax:  (202) 220-9601
ppatterson@cooperkirk.com

* Appearing *pro hac vice*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2014, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

following:

Joseph E. Murray
Robert H. Miller
      *Attorneys for Defendants*
MURRAY MURPHY MOUL + BASIL LLP
1533 Lake Shore Drive
Columbus, Ohio 43204

s/ Peter A. Patterson
Peter A. Patterson, Bar No. 0080840
      *Trial Attorney*
Charles J. Cooper*
David H. Thompson*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel:  (202) 220-9600
Fax:  (202) 220-9601
ppatterson@cooperkirk.com

* Appearing *pro hac vice*

*Attorneys for Plaintiffs*
