# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**ROBERT BAYNARD,** *et al.***,**

            **Plaintiffs,**

**-v-**                                       **Case No.:  2:14-cv-1367**
                                              **JUDGE SMITH**
                                              **Magistrate Judge Jolson**

**COMMONWEALTH INVESTMENTS
LTD.,** *et al.***,**

            **Defendants.**

## OPINION AND ORDER

This matter is before the Court on the parties' cross-motions for summary judgment.
(*See* Docs. 21 and 27).  The Motions have been fully briefed and are now ripe for review.  For
the reasons that follow, the Court **GRANTS in part and DENIES in part** Plaintiffs' Motion for
Summary Judgment and **GRANTS in part and DENIES in part** Defendants' Motion for
Summary Judgment.

## I.    BACKGROUND

Plaintiffs Robert Baynard, Nancy Wilkinson Newell, William A. Wilkinson, William
Landis, Jr., and Robert W. Schuetz, Jr.[1] initiated this action against Defendants Commonwealth
Investments, Ltd. and Duquesne Properties, LLC for breach of contract and declaratory
judgment.  The aforementioned Plaintiffs together own 23/36 interest in the parcel of land
located at 35 East Gay Street in downtown Columbus, Ohio (hereinafter "the Property").  The

---

[1] Plaintiffs Henry S. Baynard, Jr., Richard Baynard, Jr., and Karen Rose were terminated following the
filing of the Amended Complaint on October 24, 2014.  (*See* Doc. 7).

Property is currently leased by Commonwealth Investments who rents the office building (the Commerce Building) located on this parcel of land.  Commonwealth Investments rents the building space out to various tenants for over $900,000 per year.  (Doc. 7, Am. Compl. ¶ 1).

In 1919, Plaintiffs' ancestor, Phillip Lang, leased the property to two developers, Theodore Leonard, Jr. and Edmund Fox (hereinafter "the Lease").  The Lease term was 99 years and was renewable at the end of that term.  The amount owed under the Lease was $6,000.00 per year, to be paid in quarterly installments of $1500.00, which was a reasonable amount for a ground lease in 1919.  However, to account for currency fluctuations, a gold clause was included in the Lease which provided: "All of the above payments . . . are to be made and paid in gold coin of the United States of America of the present standard of weight and fineness, but the Lessees may pay the same in any current legal tender money.  .  .."  (*See* Doc. 7-1, 1919 Lease attached as Ex. A to Am. Compl.).[2]

In June 1933, as a result of the Great Depression and President Roosevelt's effort to "overhaul . . . American monetary policy" Congress passed a Joint Resolution that rendered all gold clauses unenforceable as "against public policy."  *216 Jamaica Ave., LLC v. S&R Playhouse Realty Co.*, 540 F.3d 433 (6th Cir. 2008); Joint Resolution of June 15, 1933, ch. 48, § 1, 48 Stat. 112, 113.  The 1933 Act barred the inclusion of a gold clause in "any obligation hereafter incurred" and provided that any existing gold clauses could be "discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender."  *Id.*  Then, in 1977, Congress amended the law to provide that all gold clause "obligations issued

---

[2] In 1919, the value of gold was $20.67 per ounce.  Today, gold is valued at more than $1,200 per ounce.  To date, the Lessee Commonwealth has continued to pay the $6,000 per year rent on the Lease.  (Doc. 7, Am. Compl. ¶ 7).

on or after the date of enactment" of the statute would be valid and enforceable.  31 U.S.C. § 463 (1976).

The developers of the Property constructed a building that still stands today.  It is currently known as the Commerce Building, but was formerly known as the Nitschke Building. Over the years, the parties to the Lease have changed.  The original Lessor, Lang, passed his interest in the property down to his children, grandchildren, and great-grandchildren.  The original Lessees, Leonard and Fox, transferred their interest from business to business.  The most recent transfers occurred on May 31, 1990, when the Lessee at that time, the Nitschke Building Limited Partnership ("Nitschke"), assigned its entire interest in the Lease to Commonwealth Investments, an Ohio general partnership (hereinafter "1990 Assignment").  Then, in 1997, Commonwealth Investments transferred that interest by way of a quitclaim deed to Defendant Commonwealth Investments, Ltd., a limited partnership.[3]

In 2013, Plaintiffs and Commonwealth negotiated a Renewal of the Lease ("2013 Lease Renewal").  The 2013 Lease Renewal extends the Lease for an additional term of 99 years and incorporates by reference "[a]ll terms, provisions and conditions of the [1919] Lease," and provides that the original terms of the Lease had "full force and effect according to its original terms, provisions and conditions" to the extent not "modified by this Renewal."  (*See* Doc. 7-4, 2013 Lease Renewal, attached as Ex. D to Am. Compl.).  The 2013 Lease Renewal takes effect on September 30, 2018, when the original Lease expires.

---

[3] Defendant Duquesne Properties, LLC is the general partner of Defendant Commonwealth Investments, Ltd., but will be referred to collectively as Defendants or Commonwealth.

## II.    STANDARD OF REVIEW

The standard governing summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Here, the parties have filed cross-motions for summary judgment, therefore, each part, as a movant, bears the burden of establishing that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law.  The fact that one party fails to satisfy that burden does not automatically indicate that the opposing party has satisfied the burden and should be granted summary judgment on the other motion.  In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light more favorable to the non-moving party."  *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate, however, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.,* 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

The Court will ultimately determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

-4-

prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–253.  Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried.  *Lashlee v. Sumner*,  570 F.2d 107, 111 (6th Cir. 1978).  The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter.  *Liberty Lobby*, 477 U.S. at 249; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Liberty Lobby*, 477 U.S. at 257).  The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party.  *Liberty Lobby*, 477 U.S. at 252.  The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).  The Court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence.  *Liberty Lobby*, 477 U.S. at 251–252; *see also Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

-5-

### III.    DISCUSSION

Plaintiffs, the lessors of the property, bring this breach of contract and declaratory judgment action against Defendants, the lessees of the property.  Defendants have cross-moved for summary judgment arguing that they are entitled to summary judgment on Plaintiffs' claims because Plaintiffs cannot establish that any obligation to pay in gold was issued after 1977.  The parties are in agreement that the original gold clause in the 1919 Lease was rendered unenforceable by the 1933 Joint Resolution declaring gold clauses to be against public policy. However, in 1977, Congress amended the Gold Clause Statute to permit gold clauses in subsequently issued obligations.  The dispute between the parties is whether the 1990 assignment of the Lease or the 2013 Lease Renewal constitute an obligation as intended under the Gold Clause Statute, thereby reinstating the original gold clause from the 1919 Lease.

### A.    Gold Clause Statute

A "gold clause" is a provision in a contract requiring "payment in gold or a particular kind of currency, or in an amount of money measured thereby."  31 U.S.C. § 463 (1976).  The 1933 Joint Resolution banned such clauses from contracts to prevent creditors from enforcing the clauses after the devaluation of the dollar and to ensure debt payments would not fluctuate based on the value of the dollar.  *See Rudolph v. Steinhardt*, 721 F.2d 1324, 1325–26 (11th Cir. 1983) (discussing the history of the gold clause).  As discussed above, in 1977, the Gold Clause Statute was amended to permit gold clauses in obligations issued after the effective date. Therefore, a gold clause is valid and enforceable if contained in "an obligation issued after October 27, 1977."  *See* 31 U.S.C. § 5118(d)(2) ("1977 Amendment").  The legislative history to the 1977 Amendment reveals that the word "issued" was intended to mean "entered into."

Senator Jesse Helms was the author of the 1977 Amendment which he had originally introduced as Senate Bill 79 on January 10, 1977.  At that time, Senator Helms explained the meaning of the bill's language:

> The text of my proposal is slightly different from that of the bill I have previously introduced on this topic.  My bill, if approved, will make enforceable, gold clause contracts entered into after the enactment of the bill.  It is intended to stand neutral with regard to the enforceability of gold clause obligations issued in the past.

123 Cong. Rec. 635 (1977); *see also Rudolph*, 721 F.2d at 1330.

The 1977 Amendment was ultimately passed by the Senate on October 11, 1977.  There was no debate of the Helms amendment; and only Senator Helms explained the meaning of the bill.  At the time, he introduced a letter from Henry Stockwell, Deputy General Counsel for the Treasury Department. The letter announced the Treasury's consent to the amendment and stated: "Senator Helms' amendment . . . would repeal the Joint Resolution with respect to obligations entered into after the date of enactment of Section 4."  123 Cong. Rec. 33, 219 (1977) (emphasis supplied).  The House passed the amendment on October 14, 1977, with no debate and only a brief exhortation by Congressman Hansen. 123 Cong. Rec. 33, 770 (1977); *see also Rudolph*, 721 F.2d at 1330–31.

**B.     Breach of Contract**

Plaintiffs have moved for summary judgment on their breach of contract claim against Defendants asserting that they have failed to pay the appropriate amount of rent due as obligated under the Lease.  The annual rent established in the 1919 Lease is $6,000 per year.  To account for inflation over the course of the 99-year Lease, a gold clause was included in the Lease.  The gold clause required that the annual rent be indexed to the price of gold.  However, Defendants

have continued to pay $6,000 per year based on the original term of the 1919 Lease.  Plaintiffs

contend that Defendants would owe 290.25 ounces of gold each year pursuant to the gold clause.

And, at approximately $1200 per ounce, the rent would be approximately $348,300 per year on

the Lease.  (*See* Doc. 7, Am. Compl. ¶¶ 7, 35).

Defendants have also moved for summary judgment on Plaintiff's breach of contract

claim asserting that they have paid the rent owed under the Lease and Plaintiffs cannot establish

any obligation to pay pursuant to the gold clause of the original 1919 Lease.

For Plaintiffs to establish breach of contract, they need to establish that there was an

obligation issued after 1977 that reinstated the gold clause in the original Lease.  Plaintiffs assert

that the original Lease is valid and binding, including the gold clause, for three reasons: (1) in

the 1990 Assignment, the former lessee Nitschke, transferred all of its interest in the Lease to

Commonwealth and that assignment constitutes an obligation within the meaning of the 1977

Amendment; (2) the 1990 Assignment was understood by all to effect a novation: a complete

substitution of Commonwealth for Nitschke; and (3) the 2013 Renewal of the Lease established

a new obligation between the parties that incorporated the terms of the prior Lease, including the

gold clause.

The issue before the Court is whether the 1990 Assignment or the 2013 Renewal

constitute an obligation issued after 1977 to restore the gold clause of the original Lease.  31

U.S.C. § 5118(d)(2) defined the term "obligation" as "any obligation . . . payable in United

States money."  As set forth above, the word "issued" is intended to mean "entered into."

*Rudolph v. Steinhardt*, 721 F.2d 1324, 1330–31 (11th Cir. 1983).  Defendants argue that they

would have had to enter into a "new obligation" to constitute an obligation issued after 1977.

Defendants argue that the Lease was merely assigned and assumed in 1990 and that the Lease was extended in 2013, therefore, no new obligation was created.

The Court will analyze first the 1990 Assignment, and if necessary, the 2013 Renewal, to determine if either constitute an obligation entered into after 1977 that restore legal force to the gold clause of the original Lease.

### 1. 1990 Assignment

In 1990, the lessee of the Property, Nitschke, entered into an agreement with Commonwealth to assign its interest in the 35 East Gay Street Property. The 1990 Assignment specifically states: "Assignor [Nitschke] hereby assigns to Assignee [Commonwealth] all of Assignor's right, title and interest in and to the Lease." And "Assignee hereby accepts, assumes and agrees to perform all of the lessees' covenants and agreements under the Lease to be performed from and after the date hereof." (Doc. 7-3, 1990 Assignment, attached as Ex. C to the Am. Compl.).

There is no dispute that a novation is created under Ohio law "where a previous valid obligation is extinguished by a new valid contract, *accomplished by substitution of parties* or of the undertaking, with the consent of all the parties, and based on valid consideration." *Williams v. Ormsby*, 966 N.E.2d 255, 259 (Ohio 2012) (emphasis added). And, a novation "need not be express, but can be implied from the circumstances or a party's conduct." *McGlothin v. Huffman*, 640 N.E.2d 598, 601 (Ohio Ct. App. 1994). Further, "[i]n Ohio, assignment of the lessee's interest in a lease does not relieve the assignor of its contractual obligations unless the lessor substitutes the new lessee with the intent to form a new contract and surrender the old." *Miller v. C.K.L., Inc*., No. 84 CA 26, 1985 Ohio App. LEXIS 6915, at *4 (Ohio Ct. App. July 19,

1985).

The dispute between the parties therefore turns on whether there was any intent to release Nitschke from their obligations under the 1919 Lease.  Plaintiffs argue that when Commonwealth took over all the rights and obligations under the Lease from Nitschke, it stepped into its place in the Lease and further, that they, as Lessors, consent to the substitution of the parties.  Plaintiffs began accepting the rent payments from Commonwealth and never sought any further payments from Nitschke.  Further, between 1919 and this Assignment in 1990, there were numerous other assignments and Defendants do not represent that all of the previous lessees are still responsible parties under the Lease and were never released.  (*See* Doc. 7, Am. Compl. ¶ 27).  In fact, at the time of the 2013 Renewal, Defendant Commonwealth "represent[ed] and warrant[ed] that it is the current Lessee under the Lease, that no other lessee party or parties have any rights, obligations or interests under the Lease, and that it has full right and authority to execute and deliver this Renewal."  (Doc. 7, Am. Compl. ¶ 31).  Defendants, however, assert that "Plaintiffs cannot prove that all parties **agreed** to a release of Nitschke when there is no evidence that any party even **requested** or **offered** such a release."  (Doc. 27, Defs.' Mot. for Summ. J. at 17) (emphasis in original).

Both parties reference the Sixth Circuit case of *216 Jamaica Ave., LLC v. S & R Playhouse Realty Co.*, 540 F.3d 433 (6th Cir. 2008).  In *216 Jamaica Ave.*, the Sixth Circuit held that the gold clause in a 1912 lease was enforceable when the defendant-lessee assumed the lease pursuant to a valid novation.  *Id.* at 436–41.  In *216 Jamaica Ave.*, the parcel of land subject to the 1912 lease was located in downtown Cleveland, Ohio.  The Court held that the gold clause was revived by the 1982 Assignment.  *Id.*  The parties in that case, just like in the case at bar,

-10-

were divided over "whether the owner at that time agreed to release the prior lessee (Halle Bros. Co.) from its obligations under the lease and to substitute the new lessee (S&R) in its place." *Id.* at 436-37.  In *216 Jamaica Ave.*, the lease in question set forth the rules "by which the owner agrees in advance to permit the substitution of a new lessee under the contract for the old lessee--the central benchmark of a novation." *Id.* at 437, citing *Hunter v. BPS Guard Servs., Inc.*, 654 N.E.2d 405, 411 (Ohio Ct. App. 1995); *Miller v. C.K.L., Inc.*, No. 84-CA-26, 1985 Ohio App. LEXIS 6915, 1985 WL 9401, at *2 (Ohio Ct. App. July 19, 1985); Restatement (2d) of Contracts § 280 cmt. d (1979).

In the case at bar, there are no specific rules for substitution of a lessee, however, the Lease does not prohibit an assignment and actually anticipates future assignments as the Lease states that it shall "run with the land, and shall extend to and be mutually binding upon the respective Lessor and Lessees and their heirs, executors, administrators, successors and assigns." (*See* Doc. 7-1, 1919 Lease).  Defendants, however, do not believe that the assignment/substitution is sufficient and rely on the observation by the Sixth Circuit in *216 Jamaica Ave*. that "[n]o doubt, an assignment under Ohio law by itself normally would not establish that a novation occurred." *Id.* at 437.  Further, the Sixth Circuit recognized that

> A lessee might sublet a property and still remain obligated under the original lease, acting in effect as a surety or guarantor of the underlying lease obligations. *See House of LaRose Cleveland, Inc. v. Lakeshore Power Boats, Inc.*, No. 60904, 1992 Ohio App. LEXIS 3186, 1992 WL 140074, at *4 (Ohio Ct. App. June 18, 1992).  That is not a novation.

*Id.* at 437.  But the circumstances in the case at bar illustrate that Nitschke is no longer a responsible party/Lessee on the original Lease.  The Sixth Circuit recognized in *216 Jamaica Ave*. that "ever since 1982, all parties to the agreement have accepted the validity of the

-11-

assignment that occurred that year and why, in accordance with the underlying agreement, no one takes the position that S&R's predecessor in interest remains on the hook for the lease payments or for any other obligation under the lease." *Id.* at 438. Just as in this case, since 1990, all parties have accepted the validity of the assignment. Further, in accordance with the express terms of the 1990 Assignment, Commonwealth "assume[d] and agree[d] to perform all of the lessees' covenants and agreements under the Lease to be performed from and after the date hereof." (Doc. 7-3, 1990 Assignment). Therefore, Commonwealth agreed to take on all of the Lessee's obligations under the original Lease, including the gold clause. And, Plaintiffs accepted the substitution of Commonwealth for Nitschke.

The Court therefore finds a valid novation in the 1990 Assignment as Defendant Commonwealth was substituted for Nitschke under the 1919 Lease. The gold clause of the original 1919 Lease is therefore reinstated. Having found the gold clause reinstated, it is not necessary to address whether the 2013 Renewal constituted a novation. The Court is concerned that despite now arguing that the 1990 Assignment reinstated the gold clause, Plaintiff did not raise this issue until filing this lawsuit in 2014, 24 years later and after the parties negotiated a renewal of the Lease in 2013. The Court is unaware of the exact rent for comparable plots of land in downtown Columbus, but just as the Court in *216 Jamaica Ave*. recognized, "one can certainly assume that it is more valuable than it was in 1912 without having to accept the truth of 216 Jamaica's assertion that it is worth more than 75 times what S&R currently pays for it." 540 F.3d at 441. With respect to this issue, Defendants assert the defenses of laches, waiver, and the statute of limitations. Specifically, Defendants argue that Plaintiffs have waived the right to demand the increased payments of rent under the Lease by accepting, without objection,

payments of $6,000 per year as tendered by the Lessee.  Further, Defendants assert that laches prevents Plaintiffs from enforcing the gold clause 24 years after it was revived.  And, finally, Defendants argue that Plaintiffs' claims are barred by the statute of limitations because under Ohio law, an action on a written contract must be brought within eight years.  Ohio Rev. Code § 2305.06.

Plaintiffs respond that none of these defenses have any merit.  Plaintiffs argue that they were under no duty to demand the rent in the amount under the Lease and therefore their silence does not amount to waiver.  Next, Plaintiffs counter that Defendants have failed to establish the defense of laches because they have not shown how they have been prejudiced from Plaintiffs' delay in asserting their claims.  Finally, Plaintiffs assert that the statute of limitations in Ohio for actions based on a written contract was fifteen years until 2012, therefore, they can recover on the past due rent going back to August 1999.  The Court will discuss each of these defenses in turn.

### a. Waiver

Waiver is the voluntary relinquishment of a known right.  *State ex rel. Wallace v. State Med. Bd. of Ohio,* 89 Ohio St. 3d 431, 435, 732 N.E.2d 960 (Ohio 2000).  To establish waiver in Ohio, Defendants must demonstrate that Plaintiffs had: (1) an existing right, benefit or advantage; (2) actual or constructive knowledge of the existence of such right, benefit or advantage; and (3) an intention to relinquish this right.  *Weaver v. Weaver*, 36 Ohio App. 3d 210, 212, 522 N.E.2d 574 (Ohio Ct. App. 1987).  Where one does not have a duty to speak, "mere silence" will not amount to a relinquishment.  *White Co. v. Canton Transp. Co.*, 131 Ohio St. 190, 198, 2 N.E.2d 501 (Ohio 1936). Relinquishment can be either by "express words or by

-13-

conduct which renders impossible a performance by the other party, or which seems to dispense with complete performance at a time when the obligor might fully perform." *Id.* The party asserting waiver must show "a clear, unequivocal, decisive act by the other party of such a purpose it amounts to an estoppel on that party's part." *Chubb v. Ohio Bureau of Workers' Comp.*, 81 Ohio St. 3d 275, 279, 690 N.E.2d 1267 (Ohio 1998).

Defendants rely on *Fay Corp. v. Bat Holdings I, Inc.*, 682 F. Supp. 1116, 1121 (W.D. Wash. 1988), in support of their argument that Plaintiffs have waived their right to demand payment in gold. Though *Fay Corp.* applies Washington state law, it provides valuable guidance on the resuscitation of a gold clause through a novation and the defense of waiver. The Court stated:

> It is clear to the Court that neither BAT I nor Fay knew with any certainty that the 1982 transfer of the leasehold revived the gold clause. If BAT I had known of the legal consequences, it likely would not have accepted the assignment. If Fay had known, it would have given notice of default pursuant to the lease or commenced suit. Fay, however, was considering several avenues of litigation during the period in question. Fay held back on litigating, trading an uncertain legal outcome in order to accomplish its objective through negotiation. Moreover, Fay is charged with constructive notice with this Court's determination that a novation revived the gold clause.
> Thus this Court concludes that Fay waives its right to rent escalation pursuant to the gold clause from the date of novation to the date the lawsuit was filed. Fay is presumed to have known of the revival of its gold clause rights from the date BAT I assumed the lease. Fay sat on its rights during that period as it attempted to negotiate more favorable terms with BAT I under equitable principles.

*Id.* The same circumstances seem to have occurred in the case at bar. If Plaintiffs had known with certainty that the 1990 novation had revived the gold clause, they could have notified Defendants that they were in default of the payment terms of the Lease, or initiated litigation prior to 2014. And, had Defendants known that the 1990 Assignment would revive the gold clause, they may not have accepted the assignment, or negotiated more favorable terms. Rather,

-14-

Defendants continued to tender the payment of $6,000 per year to Plaintiffs and Plaintiffs continued to accept that as payment in full under the terms of the Lease.

In the context of landlord tenant law in Ohio, the acceptance of late rent "constitutes a waiver of strict compliance with a lease and estops the landlord from enforcing any forfeiture provisions in the lease." *Columbus Metropolitan Housing Authority v. Jackson*, 1982 Ohio App. LEXIS 13156 (Ohio Ct. App. 1982); s*ee also Finkbeiner v. Lutz*, 337 N.E.2d 655, 657 (Ohio Ct. App. 1975); *Lauch v. Monning*, 239 N.E.2d 675, 676–677 (Ohio Ct. App. 1968) ("A course of dealing in accepting overdue rent had been established between the parties whereby [the lessor] had waived any right to claim forfeiture for late payment of the rent installments without giving [the lessee] advance notice of his intention to require strict compliance with the terms of the lease.  That is the well settled law of Ohio.").  Therefore, "once a course of dealing in accepting late rent payments has been established, if a landlord enforces strict compliance with the lease terms, then he must give the tenant notice of such intent." *Id.*  Similarly, in the case at bar, Plaintiffs continued to accept the amount of money tendered by Defendants as rent under the Lease and never demanded any additional amount from Defendants.  Therefore, Plaintiffs waived their right to demand higher payments under the Lease by accepting, without objection, payments in the amount tendered.  However, this waiver only bars Plaintiffs' claims on the increased amount of rent up until the filing of this lawsuit on August 27, 2014.

### b.    Laches

Laches is the "negligent and unintentional failure to protect one's rights." *Chirco v. Crosswinds Cmtys., Inc.*, 474 F.3d 227, 231 (6th Cir. 2007) (quoting *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991)).  "A party asserting laches must show: (1)

lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Id.* (quoting *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001)).  The Court believes that laches may also be an applicable defense to Plaintiffs' claims, however, as Plaintiffs correctly point out, Defendants failed to set forth any prejudice to them as a result of Plaintiffs waiting until 2014 to bring these claims until their combined reply and surreply briefs.  (*See* Doc. 27, Defs.' Mot. at 27; Doc. 29, Defs.' Reply at 13–14).  Defendants assert that they are unable to discover relevant information about predecessors of the Lease which materially prejudice its ability to defend this case.  Having addressed Plaintiffs' claims and finding that waiver is applicable, the Court does not find it necessary to further address the laches defense or the statute of limitations argument.

## IV.   CONCLUSION

Based on the foregoing, the Court **GRANTS in part and DENIES in part** Plaintiffs' Motion for Summary Judgment and **GRANTS in part and DENIES in part** Defendants' Motion for Summary Judgment.  The Court finds that the gold clause of the original 1919 Lease was reinstated when the parties entered into the 1990 Assignment.  But with respect to rent owed on the Lease pursuant to the gold clause, the Court finds that Plaintiffs waived any right to collect prior to the filing of this lawsuit.  Final judgment shall therefore be entered in favor of Plaintiffs for outstanding rent owed since August 27, 2014.

The Clerk shall remove Documents 21 and 27 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

> **IT IS SO ORDERED.**

_/s/ George C. Smith_
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**
